There are four reasons that this court should vacate Mr. Common's sentence and remand for a new trial. I'll focus on two this morning. First, the district court abused its discretion in admitting expert testimony about how uncommon it was to find fingerprints on a gun. That testimony was irrelevant, prejudicial, and confusing. Second, the prosecutor made multiple remarks during closing argument that misstated the evidence and, worse, distorted the burden of proof. The prejudice here, a case where the evidence was so contested, thin in our view, that it had to be tried three times. The prejudice here was clear. I won't address the other two reasons for reversal and remand unless the court has questions about them. I'm happy to answer them. Just to focus on the fingerprint issue, you have no objection to Mr. Savage's testimony other than the statistical evidence that came in at the end, the three guns out of 800 that he tested. So your objections are focused on that bit of his testimony. That's exactly right. The testimony that 30 out of 800 guns in his eight or nine year career he was able to find fingerprints on. Otherwise, he testified about what a fingerprint is, the different types of fingerprints, how fingerprints are found, why a print can or can't be recovered, and he testified that no prints were found on the gun that Adolph Common was alleged to have possessed. We didn't object to any of that. The testimony, the statistical testimony, is irrelevant. It does not tend to make any fact of consequence more or less probable than it would have been without that particular fact or evidence. Whether only 30 out of 800 guns that he's analyzed have good prints doesn't make it more or less probable that Mr. Common possessed the gun in this case. Now, and in the trial— One point of clarification. Did the defense in the trial want to use the lack of fingerprints on the gun? No. And that's in contrast to some of the few cases that we see here. We certainly asked on cross-examination the expert to clarify one reason there may be no prints on the gun. In addition to the many others he mentioned during direct is that Mr. Common didn't touch the gun at all. The expert agreed. We moved on. But our case about Mr. Common's innocence turned largely on—and this was consistent through the three trials—on the fact that the officer's testimony was contradicted and that all the government had to rely on was the three officers who said that they saw a gun and they heard a confession. And there was no independent corroboration of the confession. There was no physical evidence in the case to tie Mr. Common to the gun. And the prosecution's evidence was matched by six eyewitnesses who say that they did not see the officers find a gun and they heard the officers tell Mr. Common's mother that they were arresting him for drugs, not a gun. That's what our case relied on. That's in contrast to Glover, the Glover case in this circuit, where the defendant wanted to affirmatively put up the lack of fingerprints on the gun to— Ms. Jackson, those six witnesses, they weren't called to the motion to suppress, were they? They were not called at the motion to suppress. They were called at each of the three trials. And so the court then had an opportunity to hear the corroboration that the district court initially said was lacking in ruling on that motion to suppress. Turning back to the fingerprint testimony, the prosecution argued below that the fact of consequence in this case was not whether Mr. Common possessed a gun, but whether or not there were prints on the gun. Even if this court accepts that, that's a fact that the rest of Officer Savage's testimony established. And that's a fact that we were willing to stipulate, too. We had that discussion with the district court in the hearing of the motion. But going to whether 30 out of 800 guns don't have prints, it's very uncommon. That goes several steps beyond discussing the gun in this case, and that's what makes it irrelevant. Do you have to show that that—let's assume that the statistical evidence should have been excluded. Do you have to show that it was also harmful? No, because Rule 401 bars irrelevant evidence, full stop. If this court finds that the evidence was irrelevant, then we move to Rule 403, where our argument is, if you think it's relevant, we do not. It still should be excluded, because it's prejudicial and confusing. And if you want, I can elaborate on our view that it was prejudicial and confusing. Well, tell me how it was prejudicial. It's prejudicial because this case did not otherwise turn on science or extended expertise of any kind. This case really came down—there was no dispute between the parties—to witness credibility. There is a danger here that statistics or any kind of evidence with an aura of science has the imprimatur of expertise or is compelling for jurors in a way that's difficult to challenge or to react to. It then becomes an unfair opportunity for the government to explain away its lack of evidence. When the real factor, the real evidentiary question here is, are there prints on the gun? No, there are prints on the gun. Everybody can move on. I will share my reaction, is that in reading Mr. Savage's testimony, I thought, yes, they did end with the statistical evidence, but his very pointed testimony about the particular firearm at issue here and why it was resistant to fingerprints, I thought was much more compelling than the statistical evidence itself. So that was a part of some scientific evidence that you didn't object to. We did not object to that. Our view was the statistics, which the government ended on, they showed an understanding of primacy and recency in each of the trials. They ended that examination on how uncommon it is for you to find fingerprints. That's especially prejudicial in a case where the evidence here was so thin that 36 jurors had to look at it, and 24 of them walked away not being able to make a decision with each other. This is contrary to Palladino, one of the few cases where this issue has come up, where the evidence of the defendant's guilt was conclusive, this court ruled. And therefore, the judge's improper line of questioning about how common it is to be able to find fingerprints was deemed harmless. It can't be deemed harmless here in a case that was so close, so tough, that the government made the unusual decision to try a man three times. It was also confusing, not just prejudicial, but confusing, because the jury was not going to hear about the 770 other cases where prints were not found, or the 30 cases where prints were found. They couldn't properly evaluate the similarity or lack of similarity with those cases. They were left to speculate about those cases, those other cases, when the real question was, did Mr. Common possess the gun in this case? I'll move on now to the prosecutorial misconduct that we've raised. During closing argument, the prosecutor told jurors that to acquit Mr. Common, they have to conclude that the officers lied, that the officers framed Mr. Common, that the officers were corrupt. The prosecutor told jurors that the defense's arguments must overcome the government's evidence and prove the officers are liars. The prosecutor... Well, let's not... I have my concerns about some of the statements that were made, but they weren't quite that. I think what the prosecution said is, if you believe that the officers are lying, then you should acquit Mr. Common. That's not quite the same as saying, you must find them to be lying for you to acquit him. There's no dispute that the prosecutors told jurors that to acquit, they have to conclude the officers lied, framed Mr. Common, were corrupt. There's also no dispute the prosecutor told jurors that reaching a verdict meant determining which side's witnesses lied to them. We could discuss that statement, but the one that you just referred to, even if we take that out, we have these other statements, and there are many of them. And this court has said over and over again that shifting the burden of proof in this way is plain error. There is four decades of precedent on this. If you go back to the late 70s in the Vargas case we cited, this court said it's error to tell jurors that they have to choose between two sides. In that case, the prosecutor said, if you find defendant not guilty, you should write on the verdict form that all the officers lied. Mid-1990s, in the Marshall case, it's error to present jurors, and I quote, with stark bright line and absolute alternatives that might serve to distort the burden of proof. In 2000, this Cornett case, it's error to tell jurors to find the defendant not guilty, you have to find that all three police officers lied, since there are many reasons a juror might. Well, let's follow up this then, because I'm sure you're going to get to this, but even if we find that the statements were improper, because they were unobjected to, we also have to do the balancing to determine whether it was actually harmful. On the cases that we've cited alone, it's plain error. There's no doubt they're improper, and there's no doubt there's prejudice here, which is the question you were asking. The remarks are harmful in this case for the same reason that the statistical testimony was harmful. This case sat on the razor's edge. The prosecution, in our view, did not have anything solid to prove Mr. Common's guilt. The three trials show that these were not holdout cases. This is not on the record, but they were not holdout cases. And the weight of the evidence is the most important factor in that five-factor test that you've referred to. And here, the weight of the evidence is not strong, and it's in no way strong like the many cases where this court has ruled that, yes, remarks were improper, but there was no harm. And there are many cases like that. Those cases are very different. You have many government witnesses testifying, no defense witnesses testifying. You have videotaped conversations, wiretaped conversations, transcripts. And then you have the court concluding the evidence was uncontroverted. There's overwhelming evidence of guilt. There's powerful evidence of guilt. We don't have that in this case. Ms. Jackson, what was the defense theory of the case? That the officers approached Mr. Common, found drugs on him. We conceded that. And in the effort to charge something greater than just 0.2 grams of cocaine or 20 grams of cocaine, threatened Mr. Common, you find us a gun or we'll put a gun on you. And when he got to the station, they indeed charged him with a gun. This came out at the suppression hearing, but that is when he first found he was being charged with a gun, when he was on his way to county court. Sounds to me like a theory that suggests framing an innocent man, at least of some charges, right? That is certainly the language the prosecution used during closing arguments. I'm asking you. Isn't that the theory, at least as to the gun, that these officers framed him? That's not the language you used, but yes, we were confident that the officers did not charge him with drugs. I'm not being critical of that approach. I'm just trying to square it up with the comment about Murphy, Hanrahan, and McNichols, and Kelly framing an innocent man. I mean, is that a comment on the theory of the defense case? It can be viewed as that, but it's also distorting the burden of proof to tell jurors that they have to choose between two stories and conclude that all of the police officers lied in order to find Mr. Common guilty. All right. Do you want to reserve some time? I do. Thank you. Mr. Hiller? May it please the court. Matt Hiller on behalf of the United States. The district court did not abuse its discretion in admitting the testimony of Chicago police officer Matthew Savage with respect to the infrequency in which he recovers fingerprints from firearms for two reasons, two primary reasons. First, the testimony of Officer Savage with respect to the infrequency of recovering fingerprints anticipated the defense closing argument that Common did not touch the gun and that the police planted the firearm. Specifically, the infrequency with which the fingerprints are recovered from the firearms addressed an inaccurate inference that could have resulted in this case because the defendant had the gun stuffed in his pants.  There were no fingerprints recovered from the gun, but that is certainly a valid argument about the unobjected to portions of Mr. Savage's testimony. But we know nothing about the circumstances of the 800 guns that he examined, so we don't know if those were recovered under circumstances comparable to the ones under which this gun was recovered. This one was recovered right away. You know, it hadn't lain out in the snow, and so those guns that Mr. Savage examined could have been from all over the place and under all sorts of circumstances, so I don't think, I have my concerns that it's not a very, we don't know whether it's a representative sample. Absolutely, Your Honor, and there was no testimony on it being a representative sample. However, Officer Savage was offered under Rule 702. His qualifications were not challenged. Most of his testimony wasn't challenged. It's just this particular part of it. Absolutely, and this was simply a statistical statement to frame his comment that this was extremely unlikely to recover fingerprints from a firearm. And as Your Honor pointed out a few minutes ago, he gave an elaborate discussion of why on this particular firearm it would be particularly difficult. The 30 out of 800 reference was merely foundational to his comment that it was unlikely to recover fingerprints off of this gun or any gun. It wasn't just this gun. There were factors about this gun that made it particularly a coarse handle and things of that could vary from gun to gun. But in general, it is extraordinarily difficult to recover fingerprints from firearms, and the 30 out of 800 comment merely provided a little context, a little foundation that is not uncommon in expert testimony. The district court, the other reason that the district court didn't abuse its discretion is by the third trial, this district court had an exhaustive understanding of where Officer Savage's testimony fit within the context of this trial. And that not only affects the 401 analysis, but also affects the 403 analysis. This district court had an excellent understanding whether this 30 out of 800 or even the larger testimony about the infrequency with which fingerprints are recovered could have affected this defendant's right to a fair trial. And the district court acted well within its discretion in determining that both the infrequency and the 30 out of 800 would have no prejudicial effect on this defendant. And while the 30 out of 800 is merely foundational, it doesn't tie Adolph Common to this gun. I'm not sure I understand what you mean by saying that it's merely foundational. It came at the end, first of all, and it wasn't the foundation for why he was able to testify this way. That was all of the reasons that he gave for why fingerprints do or do not transfer from an object. Maybe the better way to describe it would be context for his statement that it was extremely uncommon to recover fingerprints. But that statistic had nothing to do with whether Adolph Common possessed this gun. And the government never presented it as a counter to some of our officers may have a problem with their story, but look at the science here. I mean, this is a negative fingerprint witness who is just merely explaining there was no fingerprint, but it is rebutting this defense argument that we knew was coming at closing that this was a matter of police corruption, that these officers violated the civil rights. And for those reasons, Your Honor, if we would ask you first. Let me understand this. The government's position is Common denies he had a gun, right? Absolutely. So you anticipate a planted gun theory and therefore you can bring this kind of an expert in? Yes. That's your theory? In this case, because we anticipate the defense is closing. Why is this case? I just want to establish where you would be going in all gun cases where there's a denial of a possession of the weapon. I don't know if it would apply in all gun cases, Your Honor, but here we were aware through openings that a, and from the prior trials as well, we were aware that the defense was going to be arguing that these police officers lied. This wasn't a situation where of constructive possession or that there was a gun present. So if the theory, which apparently it is here that there's a police officers are framing somebody by planning a gun and that's you hear, you know, it because of a series of trials that would allow the government to suggest that the weapon that is in question is, is belongs in the case, even though there's no fingerprints. I'm just, I just, just want to see where you're going with that. I'm sorry, Your Honor. I might not understand your question. Common says he didn't have a gun and the gun that is an issue has been planted. Correct. So under the theory that every planted gun probably has no fingerprint, right? If you're going to extend this theory of conspiracy, right? Right. So in aid of that, rebutting that theory of that or the theory that there's a planted gun, you're always going to be able to bring into evidence that the gun in question didn't have a fingerprint. Of course, if you had a fingerprint, that'd be a whole other situation. I don't know about every case, but I think in an overwhelming number of them, we would because of the reason the district court articulated, which is that there's a common misperception about law enforcement's unrealistic capabilities with respect to forensic evidence. So when you couple that common misperception with the fact that there's no fingerprint, and in this specific case where you have a gun in someone's pants and they're caught in a reactive situation where the police officers come up on top of and there's no chance to clean the gun, there's no possible explanation. That common misperception leads to an inaccurate evidence. In the opening statement by the defense, did they mention the absence of a fingerprint? No, I don't believe they did, Your Honor. Right. So where was the anticipation that that would come up later in a trial? Well, the only defense argument with respect to the fingerprint, there was cross-examination and, of course, asking that there's another explanation for why there's no fingerprint. Of course, Common didn't touch the gun. But in closing arguments, they did make the argument that he did not touch the gun. That's the only argument with respect to the fingerprint. It's the larger argument with respect to the police corruption. Thank you, Your Honors. With respect to the prosecutorial misconduct arguments at trial, the government did not plainly err by failing to grant a mistrial as a result of the government's arguments, rebuttal arguments, when the defendant did not object. First, the government did not shift the burden in its rebuttal argument. Unlike the cases relied on by the defendant, the government did not present the false ultimatum of having to find the officers as liars or corrupt or anything to acquit. Came pretty close. I mean, they drew the stark line and said, this is a case in which somebody's lying and you have to figure out who it is. Absolutely. And that comparison, I think, was addressed by this court's opinion in Amerson, where you can discuss the fact that it's a very difficult case and there is going to be a credibility contest here. And it's coming down. You can't marry those stories up. But here, the government was careful not to put the jury in that box of having to decide, are the officers liars or is the defendant guilty? It was a strong argument. It was a blunt argument. There was sarcasm in the argument, but it did not cross the line of shifting the burden. In fact, the jury was reminded during the rebuttal argument the government bears the burden, and obviously at multiple times by the district court's instructions. With respect to the government's statements, with respect to cell phones and defendants not observing the arrest, excuse me, not observing the arrest and asking the officers about what they were doing to the defendant, those were misstatements, as discussed in the brief. They do not rise to the level of reversible error for several reasons. One, the defendant did not object. Two, they were two of numerous argues on why the jury can reject the defendant's witness's accounts of the arrest. Three, before and after the closing arguments, the district court instructed the jury that the arguments of the lawyers are not evidence. And the misstatements in the context of the trial and the rebuttal argument itself do not support the conclusion that the defendant was denied a fair trial and that the outcome of the proceedings would have been different. For those reasons, Your Honor, and the reasons stated in the government's brief, the government would respectfully request that this court affirm the conviction and sentence in the district court. Thank you. Thank you, Mr. Hiller. Ms. Jackson. Just briefly, the prosecution mentioned, the government mentioned just now that the district court judge had an exhaustive understanding of the case. By the time it was ruling on the statistical testimony the third time, that's our position why the district court should have known by then that it was irrelevant. And the real fact is there were no fingerprints on the gun, not disputed. So at this point, the state of the law in this circuit is that there are two cases that have acknowledged that how often a gun is or is not found, or prints are or are not found on a gun is irrelevant. That's Palladino, and then Glover comes behind and says Palladino's dicta, but absent the defendant opening the door, this is irrelevant. This case presents an opportunity for this circuit to establish clear precedent on this question. It comes up again and again and again. The government often introduces Chicago Police Department technicians, fingerprint technicians, to discuss this issue in gun cases. As to prosecutorial misconduct, this is not a case, and now I'm quoting from the Pirovolos case in 1988 in this circuit, this is not a case where there is, quote, strong evidence of guilt to eliminate doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations. Our position is we can't dismiss any of the misstatements, which the prosecution concedes for the most part, and any distortions and any erroneous evidentiary rulings as harmless in light of the narrow margins on which the prosecution's case rested here. So we are asking the court to vacate the sentence and remand the case for a new trial. Thank you. All right. Thank you, Ms. Jackson. Thanks to all counsel. The case is taken under advisement.